**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

LEIGH THORNTON, an individual,

        Plaintiff,

v.

IGORS TJUTINS a/k/a Gary Tyutin, an individual, TATIANA TYUTINA, an individual, BOAT EXPORT USA, LLC, a Florida limited liability company, BOAT SHIPPING USA, LLC, a Florida limited liability company,

        Defendants.

CASE NO.

**COMPLAINT FOR VIOLATION OF THE**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

Plaintiff, LEIGH THORNTON, by and through undersigned counsel, sue IGORS TJUTINS, TATIANA TYUTINA, BOAT EXPORT USA, LLC, and BOAT SHIPPING USA, LLC as follows:

**SUBJECT MATTER JURISDICTION AND VENUE**

1. This is an action for damages including pursuant to 18 U.S.C. § 1964 (the "Racketeer Influenced and Corrupt Organizations Act" or "RICO"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

2. Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c).



## THE PARTIES AND PERSONAL JURISDICTION

3.      Plaintiff LEIGH THORNTON (**"Thornton"**) is an individual, and is a resident and citizen of New Zealand.

4.      Defendant Igors Tjutins a/k/a "Gary Tyutin," (**"Igors"**) is an individual, is sui juris, is a resident and citizen of Florida, and is subject to the personal jurisdiction of this Court.

5.      Defendant Tatiana Tyutina (**"Tatiana"**) is an individual, is sui juris, is a resident and citizen of Florida, and is subject to the personal jurisdiction of this Court.

6.      Defendant BOAT EXPORT USA, LLC (**"Boat Export"**) is a limited liability company organized and existing under the laws of Florida and is subject to the personal jurisdiction of this Court.

7.      Defendant BOAT SHIPPING USA, LLC (**"Boat Shipping"**) is a limited liability company formerly organized and existing under the laws of Florida but administratively dissolved since 2015, and is subject to the personal jurisdiction of this Court.

## ALLEGATIONS COMMON TO ALL COUNTS

**A.      The Tjutins Bait, Hook, and Switch Thornton Into The Tjutins'
RICO Enterprise's Fraudulent International Boat Sale Scheme**

8.      Thornton resides in New Zealand.

9.      In or around July 2019, Thornton became interested in purchasing a pleasure boat to enjoy with his family.

10.     Defendants Igors and Tatiana, on information and belief husband and wife, (collectively the "Tjutins") reside in Florida.

11.     The Tjutins concocted, organized, perpetrated, and continue to perpetrate, a complex scheme to fraudulently lure domestic and international boat buyers, like Plaintiff, from their remote locations, to purchase vessels the Tjutins publish on their websites, while at every

step from inception, through switch, through incompetent delivery of damaged goods, Defendants systematically bilked Thornton, and other similarly situated buyers, out of their funds.

12.     To perpetrate their fraud, the Tjutins formed at least two (2) corporations: (i) Defendant Boat Export, and (ii) Defendant Boat Shipping.  Through websites associated with at least Defendants Boat Export and Boat Shipping, the Tjutins lure unsuspecting customers interested in purchasing and then shipping sea vessels to their homes.

13.     Through each of their websites the Tjutins advertise the corporate defendants to be legitimate, separate, partner businesses, but they instead, together with the Tjutins, constitute a fraudulent RICO enterprise (the "RICO Enterprise") the Tjutins created to mask and perpetrate their fraudulent scheme.

14.     The Tjutins use the various companies, and their positions as officers in each, and even use a pseudonym (as to Igors), to present a shell game where the Tjutins cloak each individual's (i.e., Igors and Tatiana) involvement from the unsuspecting public.

15.     As set forth in Florida sunbiz records, Tatiana is an officer of Boat Export and Boat Shipping, while Igors is not.   Although the Tjutins advertise (including to Plaintiff) that Boat Export and Boat Shipping are partners, and as set forth below Boat Shipping purchased the vessel and its trailer in this action, Boat Shipping was administratively dissolved in 2015.

16.     As set forth above, Boat Export and Boat Shipping operate separate websites related to sea vessel services, i.e., sales and shipping respectively.  Both websites, are controlled and operated by the Tjutins, and both websites share trademarks and similar website structures.  See Composite Exhibit "A" attached hereto.

17.     Through their company Boat Export's website (www.boatexportusa.com) the Tjutins issue their siren call to their unsuspecting target market, throughout the U.S., including in this district, and around the world, for example, as follows:

   a.     falsely representing that Boat Export (1) would act as Plaintiff's agent; (2) would advise Plaintiff on a vessel purchase; (3) would obtain the best price possible for a vessel, and (4) would receive compensation limited to an "export coordination fee" of $5,000;

   b.     falsely representing the availability of a specific vessel for sale with no actual intention of securing the sale of the vessel but instead to bait a buyer into disbursing funds to pay for such vessel to subsequently apply it to another vessel more profitable to the Tjutins, i.e., the bait and switch;

   c.     falsely representing that Boat Export would competently ship the vessel internationally including by competently packing it and draining all liquids from the vessel prior to shipping; and/or

   d.     falsely representing that Boat Export would maintain all purchase funds in an escrow account.

18.     Copies of sample Boat Export website representations to Plaintiff (printed from way back are attached hereto as Composite Exhibit "B."

19.     In reality, at every step from inception, through switch, through incompetent delivery of damaged goods, Defendants systematically bilked Thornton, and other similarly situated buyers, out of their purchase funds.

**B.     Igors Induces Thornton to Purchase a Vessel**

20.     In July 2019, Plaintiff visited the Boat Export website.

21.     On July 29, 2019, Plaintiff contacted Boat Export regarding a particular vessel that was advertised on its website, a vessel model Monterrey 265.

22.     One "Gary Tyutin" responded.  At all times, Plaintiff dealt with this so called "Gary Tyutin."  On information and belief, Gary Tyutin was not a real name.  Instead, it was Igors Tjutins using that pseudonym without notice to Plaintiff.  On information and belief, the Tjutins use

different spellings of their last names, and use at least one invented name for Igors, to conceal their association, i.e., "Tjutins," "Tyutin," and "Tyutina."

23.     On August 6, 2019, Plaintiff purchased the vessel Monterrey 265 and wired USD$34,125 directly to Boat Export.  However, later Igors told Plaintiff that the boat was no longer available.  Plaintiff requested a refund but Boat Export failed to issue the refund and the funds were kept under the Tjutins' control.

24.     This bait and switch is the crux of the Tjutins' fraudulent scheme.

25.     Preemptively setting up the ruse, the Boat Export website expressly states:

> We charge $5,000 per each boat as [sic] export coordination fee if [Boat Export is] hired to buy a boat (which is listed on each Invoice we issue as "Boat Expert Coordination Fee") *in case the buyer paid for the boat advertised for sale by owner, even if that boat is sold, doesn't exist or ad is fake.*  $5,000 export coordination fee is waived if the buyer finally purchased [sic] a boat from us or elsewhere *if we acted as buyers agent in that transaction.*  We always offer a solution to continue to find another boat until found rather than charging a fee.

See Exhibit "B" (emphasis added).

26.     In short, the Tjutins outrageously induce unsuspecting buyers to pay tens of thousands of dollars while the Tjutins purport to disavow (which they cannot) an obligation to even confirm if the advertised boat has been "sold, *doesn't exist*, or *ad is fake*." Id.  With the Tjutins at all times knowing that the boat does not exist and/or the ad is fake, the Tjutins retain the buyer's money, assert a $5,000 debt, and switch the sale to a more profitable boat: the hook and the switch.

27.     On August 22, 2019, Plaintiff sent Igors other options of boats he was interested in purchasing.  However, Igors dismissed those requests and instead offered a 2011 Rinker vessel.

28.     As part of his sales pitch, Igors wrongfully and expressly stated that the subject boat only had cosmetic fiberglass damage which would cost the Plaintiff a maximum of $1,000 to fix

and that it had no holes or other damage.  Igors also stated that the owner wanted USD $28,000 for the vessel but that the current market value of the vessel was between USD $45,000 to USD $50,000.

29.     Upon this information, Plaintiff agreed to purchase the vessel for USD $39,045, which included a used trailer and shipping of both the vessel and the trailer to Auckland, New Zealand.  See Invoice, at Exhibit "C."

30.     When Plaintiff asked Igors to negotiate down the price of the boat, Igors represented to Plaintiff that the owner's price was "firm."  In reality, and as more fully set forth below, Igors and Boat Export (*Plaintiff's purchasing agent*) purchased the boat for $23,000 and misrepresented to Plaintiff it was for $28,000.  To hide the subterfuge, Igors conspired with Tatiana such that the purchaser of the vessel was Boat Shipping (i.e., a corporate entity dissolved since 2015), with Tatiana signing for that entity.  In the same manner, the Enterprise purchased the trailer through the dissolved Boat Shipping, i.e., Tatiana, for $4,394, and misrepresented to Plaintiff it was for $5,900.

31.     Over the next couple of months, the Enterprise (through Igors) continually increased the costs for the vessel until it reached a full and final value of USD $45,440.

32.     The Enterprise, through Boat Shipping, i.e., Tatiana, purchased the 2011 Rinker from the owner and obtained possession of the vessel.  Once in their possession, the Enterprise caused the original motor on the vessel, to be replaced by an older substandard engine.  Pursuant to his investigation Plaintiff learned from the previous owner that the engine the Tjutins purchased only had 50 hours of operation, while the engine that the Tjutins delivered to Plaintiff shortly after purchase, easily had 160 hours of operation.

THE BOBADILLA LAW FIRM

INTELLECTUAL PROPERTY LAW & COMPLEX BUSINESS LITIGATION

33.     On October 17, 2019, the Tjutins finally caused the vessel to be placed on a shipping container for delivery.

34.     Igors falsely represented to Plaintiff costs related to the export of the vessel wrongfully adding profit for Boat Export in contravention of Boat Export's misrepresentations that its fee was limited to $5,000, including (i) for removing the vessel from the water when the original owner did so and no such cost existed, (ii) continually falsely increasing fumigation costs; (iii) false ground transportation; (iv) false "high season" container packing costs; (v) false file export processing; (vi) false Fed Ex fees; (vii) false wire transfer fees, and so on.

35.     Further Igors falsely represented to Plaintiff that the vessel was not insured by Defendant and requested that Plaintiff pay for Defendant to secure such insurance, which Plaintiff declined.  On information and belief Boat Export's existing insurance covered the vessel and the Tjutins expected the vessel to sustain damage from their incompetent shipping.

36.     To be sure, Igors then informed Plaintiff that the vessel had sustained some cosmetic damage in a storm but that it would only cost the Plaintiff an additional USD $1,000 to fix.

37.     Upon Plaintiff's receipt of the vessel in New Zealand, it was apparent that there was not cosmetic damage but instead serious damage to the vessel.  It was apparent that the Tjutins, recklessly and/or incompetently, did not pack the vessel so it was protected during shipping and the vessel sustained major damage to the hull and topside.

38.     In contravention to the promises in Boat Export's website, i.e., the Tjutins' website, that all liquids were drained prior to shipping, the vessel arrived with a full tank of fresh water and a third full tank of waste water.  In addition, the petrol tank contained 40 liters of fuel and the engine had 2.5 liters of water/oil sludge in the oil compartment along with water beneath the

THE BOBADILLA LAW FIRM
INTELLECTUAL PROPERTY LAW & COMPLEX BUSINESS LITIGATION

sparkplugs.  Further, contrary to competent shipping practices and contrary to Boat Export's website representations, the battery was still connected to the main vessel circuit.

39.     Plaintiff incurred substantial costs repairing the boat.

40.     Plaintiff made demands to Boat Export regarding the breach of the agreement but Boat Export ignored them.

41.     Plaintiff also made demands to Boat Export regarding the multiple misrepresentations on Boat Export's website, as well as the misrepresentations made prior and during the sale, but Boat Export ignored them.

42.     Plaintiff suffered substantial damages.  Plaintiff recovered some insurance compensation but Plaintiff was not made whole.

43.     If unchallenged, the Tjutins will continue their criminal international boat sale scheme robbing unsuspecting customers in the U.S., in this district, and throughout the world.

## FULFILLMENT OF CONDITIONS PRECEDENT, ENTITLEMENT TO ATTORNEY'S FEES AND PUNITIVE DAMAGES

44.     All conditions precedent to the maintenance of this action have been performed, have occurred, or have been waived or excused.

45.     Plaintiff have retained the undersigned attorneys to bring this action and are obligated to pay a reasonable attorney's fee for their services.  Plaintiff' are entitled to an award of their attorney's fees against Defendants, among other things, pursuant to 18 U.S.C. § 1964(c).

46.     Because the Tjutins's actions as described herein were performed with actual malice, ill will and gross indifference to or with reckless disregard of Plaintiff's rights, and amount to willful and wanton acts which were deliberate and without reasonable cause or basis, Plaintiff seek punitive damages.

## COUNT I:
## RACKETEERING
## IN VIOLATION OF 18 U.S.C. § 1964
### (All Defendants)

47.     Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 46 above as if fully and expressly set forth herein and further allege as follows.

48.     The operations of the Tjutins, individually and through Boat Export and Boat Shipping, in their fraudulent international bait and switch boat sale scheme constitutes a racketeering operation.

49.     The Tjutins directed and coordinated the following entities (i) Boat Export, (ii) Boat Shipping, and/or (iii) as yet unidentified additional parties (the "Tjutins RICO Enterprise" or "Enterprise") within the meaning of 18 U.S.C. § 1961(4), which Enterprise was engaged in, or the affairs of which affected, interstate and foreign commerce.

50.     Each Tjutins, was also a member of the Tjutins RICO Enterprise as each was a distinct person, separate and apart, from each of the Tjutins RICO Enterprise members together.

51.     The Tjutins RICO Enterprise engaged in a pattern of racketeering activity.

52.     Each entity's participation was effective partly because each was an actual on-going business with a presence in the marketplace: the United States and indeed worldwide.  Thus the entities together, made coordinated fraudulent representations to Plaintiff, and to other similarly situated customers.

53.     As co-conspirators, the unlawful conduct of each member of the Tjutins RICO Enterprise is attributed to every member, i.e., Igors, Tatiana, Boat Export, and Boat Shipping.

THE BOBADILLA LAW FIRM
INTELLECTUAL PROPERTY LAW & COMPLEX BUSINESS LITIGATION

54.     As set forth above, the Tjutins RICO Enterprise engaged in the following predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1):

      a.    Mail fraud in violation of 18 U.S.C. § 1341;

      b.    Wire fraud in violation of 18 U.S.C. § 1343;

      c.    Acts interfering with commerce in violation of 18 U.S.C. § 1951; and

      d.    Fraud.

55.     The predicate acts set forth in this Complaint, include defrauding Plaintiff beginning in late 2019, through the Boat Export website, international telephone calls, and e-mails with Plaintiff, including by:

      a.    falsely representing to Plaintiff that Boat Export (i) would act as Plaintiff's agent; (ii) would advise Plaintiff on a vessel purchase; (iii) would obtain the best price possible for a vessel, and (iv) would receive compensation limited to an "export coordination fee" of $5,000, when in reality Defendants gained Plaintiff' trust and then systematically bilked Plaintiff out of his funds;

      b.    falsely representing the availability of a specific vessel for sale with no actual intention of securing the sale of the vessel but instead to bait Plaintiff into disbursing funds to pay for such vessel to subsequently apply it to another vessel more profitable to the Enterprise, i.e., the bait and switch;

      c.    falsely representing that Boat Export would maintain all purchase funds in an escrow account;

      d.    falsely representing that the 2011 Rinker vessel that the Enterprise switched for the Monterrey 265, only had cosmetic fiberglass damage which would cost the Plaintiff a maximum of $1,000 to fix and that it had no holes or other damage, when in reality the vessel had major undisclosed damage;

      e.    falsely representing to Plaintiff that the subject vessel's "seller is absolutely firm on the price" of $28,000 to sell the vessel, and that Defendant paid that amount, when in reality the Tjutins obtained the vessel for $23,000;

f.      falsely representing that the alleged $28,000 sale price for the 2011 Rinker vessel alone, was very good because other similar vessels in good condition cost between USD $45,000 to USD $50,000, when in reality the vessel was worth far less than $28,000 because it was severely damaged, and because the Enterprise would later fraudulently fit it with a sub-standard engine different from that of the subject vessel that the Tjutins purchased from the previous owner Sean Tidwell;

g.      falsely representing to Plaintiff that the trailer's original owner demanded and received $5,900 to sell the vessel, in reality the Enterprise obtained the trailer for $4,394;

h.      falsely representing, including on the Boat Export website, that Boat Export would drain all liquids from the vessel prior to shipping, which the Enterprise then failed to do causing significant additional damage to the vessel during transport to New Zealand;

i.      falsely representing that Boat Export would pack the vessel competently to avoid damage during transportation;

j.      falsely representing that Boat Export would provide Plaintiff with photographs of the vessel being packed into the container;

k.      falsely representing to Plaintiff that the vessel was not insured by Boat Export and requesting that Plaintiff pay for insurance, when on information and belief existing insurance covered the vessel;

l.      falsely representing costs related to the export of the vessel wrongfully adding profit for the Enterprise in contravention of Defendant's misrepresentations that Boat Export's fee was limited to $5,000, including inflated costs (i) for removing the vessel from the water when the original owner did so and no such cost existed, (ii) continually falsely increasing fumigation; (iii) false ground transportation; (iv) false "high season" container packing costs; (v) false file export processing; (vi) false Fed Ex fees; (vii) false wire transfer fees, and so on; and

m.      on the preceding false representations causing Plaintiff to initiate the following international wires to Boat Export: (i) $34,125 on August 6, 2019; (ii) $9,325 on September 17, 2019; and (iii) $3,190 on October 8, 2019.

56.     The predicate acts set forth in this Complaint are related, in that they have the same or similar purposes, results, participants, and methods of commission, and are otherwise interrelated by distinguishing characteristics and are not isolated events.  The related criminal

schemes set forth in this Complaint constitutes a "pattern or patterns of racketeering activity" as defined in 18 U.S.C. § 1961(5).

57.     The Defendants engaged in two or more predicated acts of racketeering within a period of ten years and committed at least one such act after October 15, 1970.

58.     The information that would establish further predicate acts and further acts of racketeering is solely within the control of Defendants.  Due to the global nature of their business interests, with the great distances between (a) the members of the Tjutins Enterprise, and (b) their unsuspecting customers including Plaintiff (e.g., New Zealand, throughout the United States, in this district, and throughout the world), practicality dictates that the Enterprise members communicated with each other, with Plaintiff, with buyers similarly situated to Plaintiff, through use of mail and wire.  Plaintiff require discovery to ferret out the further extent of predicate acts and further acts of racketeering, including the identity of similarly situated defrauded buyers and the scope of the systematic fraud.

59.     Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in acquisition of an interest in, or in the establishment or operation of, the Tjutins RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(a).

60.     Defendants through a pattern of racketeering activity maintain, directly or indirectly, an interest in or control of the Tjutins RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(b).

THE BOBADILLA LAW FIRM
INTELLECTUAL PROPERTY LAW & COMPLEX BUSINESS LITIGATION

61.     Each Tjutins was associated with the Tjutins RICO Enterprise, and conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described herein in violation of 18 U.S.C. § 1962(c).

62.     (1) Igors, (2) Tatiana, (3) Boat Export, (4) Boat Shipping, and/or (5) as yet unidentified additional parties each entered into a conspiracy to conduct or participate, directly or indirectly, in the conduct of the Tjutins RICO Enterprises' affairs through the pattern of racketeering activity described herein, in violation of 18 U.S.C. § 1962(d).

63.     As a direct and proximate result of Defendants' unlawful actions, in conjunction with the actions of its co-conspirators and associates, Plaintiff has suffered damages.

WHEREFORE, Plaintiff LEIGH THORNTON demands that judgment be entered against Defendants IGORS TJUTINS a/k/a Gary Tyutin, TATIANA TYUTINA, BOAT EXPORT USA, LLC, and BOAT SHIPPING USA, LLC, jointly and severally, as follows:

(a)     damages;

(b)     statutory trebled damages pursuant to 18 U.S.C. § 1964(c);

(c)     punitive damages;

(d)     costs, including reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c);

(e)     costs;

(f)     interest; and

(g)     such other and further relief as this Court deems just and proper.

## COUNT II:
## FRAUD
### (Igors and Boat Export)

64.     Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 46 above as if fully and expressly set forth herein and further allege as follows.

THE BOBADILLA LAW FIRM
INTELLECTUAL PROPERTY LAW & COMPLEX BUSINESS LITIGATION

65.   Defendants committed fraud on Plaintiff.

66.   Beginning in July 2019, through representations ion the Boat Export website, and by e-mails and phone calls, Boat Export and Igors:

a.   falsely representing to Plaintiff that Boat Export (i) would act as Plaintiff's agent; (ii) would advise Plaintiff on a vessel purchase; (iii) would obtain the best price possible for a vessel, and (iv) would receive compensation limited to an "export coordination fee" of $5,000, when in reality Defendants gained Plaintiff' trust and then systematically bilked Plaintiff out of his funds;

b.   falsely representing the availability of a specific vessel for sale with no actual intention of securing the sale of the vessel but instead to bait Plaintiff into disbursing funds to pay for such vessel to subsequently apply it to another vessel more profitable to the Enterprise, i.e., the bait and switch;

c.   falsely representing that Boat Export would maintain all purchase funds in an escrow account;

d.   falsely representing that the 2011 Rinker vessel that the Enterprise switched for the Monterrey 265, only had cosmetic fiberglass damage which would cost the Plaintiff a maximum of $1,000 to fix and that it had no holes or other damage, when in reality the vessel had major undisclosed damage;

e.   falsely representing to Plaintiff that the subject vessel's "seller is absolutely firm on the price" of $28,000 to sell the vessel, and that Defendant paid that amount, when in reality the Tjutins obtained the vessel for $23,000;

f.   falsely representing that the alleged $28,000 sale price for the 2011 Rinker vessel alone, was very good because other similar vessels in good condition cost between USD $45,000 to USD $50,000, when in reality the vessel was worth far less than $28,000 because it was severely damaged, and because the Enterprise would later fraudulently fit it with a sub-standard engine different from that of the subject vessel that the Tjutins purchased from the previous owner Sean Tidwell;

g.   falsely representing to Plaintiff that the trailer's original owner demanded and received $5,900 to sell the vessel, in reality the Enterprise obtained the trailer for $4,394;

h.   falsely representing, including on the Boat Export website, that Boat Export would drain all liquids from the vessel prior to shipping, which the Enterprise then failed to do causing significant additional damage to the vessel during transport to New Zealand;

i.    falsely representing that Boat Export would pack the vessel competently to avoid damage during transportation;

j.    falsely representing that Boat Export would provide Plaintiff with photographs of the vessel being packed into the container;

k.    falsely representing to Plaintiff that the vessel was not insured by Boat Export and requesting that Plaintiff pay for insurance, when on information and belief existing insurance covered the vessel;

l.    falsely representing costs related to the export of the vessel wrongfully adding profit for the Enterprise in contravention of Defendant's misrepresentations that Boat Export's fee was limited to $5,000, including inflated costs (i) for removing the vessel from the water when the original owner did so and no such cost existed, (ii) continually falsely increasing fumigation; (iii) false ground transportation; (iv) false "high season" container packing costs; (v) false file export processing; (vi) false Fed Ex fees; (vii) false wire transfer fees, and so on.

67.    The Defendants' representations were material, were false and were made with no present intent in performing them.

68.    Defendants made their misrepresentations to Plaintiff with the intention that Plaintiff rely upon the misrepresentations and act upon them.

69.    Defendants knew or should have known that their representations to Plaintiff were false at the time they were made and made the representations without any intention of performing or with the positive intention not to perform consistent therewith.

70.    Plaintiff justifiably relied upon the above misrepresentations and omissions of material fact.

71.    The information that would establish further acts of fraud is solely within the control of Defendants.  Therefore, Plaintiff require discovery to ferret out these additional facts.

72.    Plaintiff has suffered damages as a direct and proximate result of Defendants' fraud.

WHEREFORE, Plaintiff LEIGH THORNTON demands that judgment be entered against Defendants IGORS TJUTINS a/k/a Gary Tyutin, and BOAT EXPORT USA, LLC, jointly and severally, for damages, interest, costs and such other and further relief as this Court deems just and proper.

## COUNT III:
## CONSTRUCTIVE FRAUD
### (Igors and Boat Export)

73.     Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 46 above as if fully and expressly set forth herein and further alleges as follows.

74.     Defendants committed constructive fraud on Plaintiff.

75.     Defendants Igors and Boat Export stood in a fiduciary relationship with Plaintiff. Moreover, Plaintiff reposed trust and confidence in Defendants.

76.     Defendants owed Plaintiff the duty to act in the same manner as a reasonably prudent purchasing advisor.  Defendants owed Plaintiff the duty to avoid self-dealing, to avoid conflicts of interest, and to maximize Plaintiff's purchase funds.

77.     Beginning in July 2019, Defendants committed constructive fraud, through the Boat Export website, and by e-mails and phone calls, by:

a.     falsely representing to Plaintiff that Boat Export (i) would act as Plaintiff's agent; (ii) would advise Plaintiff on a vessel purchase; (iii) would obtain the best price possible for a vessel, and (iv) would receive compensation limited to an "export coordination fee" of $5,000, when in reality Defendants gained Plaintiff' trust and then systematically bilked Plaintiff out of his funds;

b.     falsely representing the availability of a specific vessel for sale with no actual intention of securing the sale of the vessel but instead to bait Plaintiff into disbursing funds to pay for such vessel to subsequently apply it to another vessel more profitable to the Enterprise, i.e., the bait and switch;

c.     falsely representing that Boat Export would maintain all purchase funds in an escrow account;

THE BOBADILLA LAW FIRM
INTELLECTUAL PROPERTY LAW & COMPLEX BUSINESS LITIGATION

d.    falsely representing that the 2011 Rinker vessel that the Enterprise switched for the Monterrey 265, only had cosmetic fiberglass damage which would cost the Plaintiff a maximum of $1,000 to fix and that it had no holes or other damage, when in reality the vessel had major undisclosed damage;

e.    falsely representing to Plaintiff that the subject vessel's "seller is absolutely firm on the price" of $28,000 to sell the vessel, and that Defendant paid that amount, when in reality the Tjutins obtained the vessel for $23,000;

f.    falsely representing that the alleged $28,000 sale price for the 2011 Rinker vessel alone, was very good because other similar vessels in good condition cost between USD $45,000 to USD $50,000, when in reality the vessel was worth far less than $28,000 because it was severely damaged, and because the Enterprise would later fraudulently fit it with a sub-standard engine different from that of the subject vessel that the Tjutins purchased from the previous owner Sean Tidwell;

g.    falsely representing to Plaintiff that the trailer's original owner demanded and received $5,900 to sell the vessel, in reality the Enterprise obtained the trailer for $4,394;

h.    falsely representing, including on the Boat Export website, that Boat Export would drain all liquids from the vessel prior to shipping, which the Enterprise then failed to do causing significant additional damage to the vessel during transport to New Zealand;

i.    falsely representing that Boat Export would pack the vessel competently to avoid damage during transportation;

j.    falsely representing that Boat Export would provide Plaintiff with photographs of the vessel being packed into the container;

k.    falsely representing to Plaintiff that the vessel was not insured by Boat Export and requesting that Plaintiff pay for insurance, when on information and belief existing insurance covered the vessel; and

l.    falsely representing costs related to the export of the vessel wrongfully adding profit for the Enterprise in contravention of Defendant's misrepresentations that Boat Export's fee was limited to $5,000, including inflated costs (i) for removing the vessel from the water when the original owner did so and no such cost existed, (ii) continually falsely increasing fumigation; (iii) false ground transportation; (iv) false "high season" container packing costs; (v) false file export processing; (vi) false Fed Ex fees; (vii) false wire transfer fees, and so on.

78.     The Defendants' representations were material, were false and were made with no present intent in performing them.

79.     Defendants made their misrepresentations to Plaintiff with the intention that Plaintiff rely upon the misrepresentations and act upon them.

80.     Defendants knew or should have known that their representations to Plaintiff were false at the time they were made and made the representations without any intention of performing or with the positive intention not to perform consistent therewith.

81.     Plaintiff justifiably relied upon the above misrepresentations and omissions of material fact.

82.     The information that would establish further acts of fraud is solely within the control of Defendants.  Therefore, Plaintiff require discovery to ferret out these additional facts.

83.     Plaintiff has suffered damages as a direct and proximate result of Defendants' constructive fraud.

WHEREFORE, Plaintiff LEIGH THORNTON demands that judgment be entered against Defendants IGORS TJUTINS a/k/a Gary Tyutin, and BOAT EXPORT USA, LLC, jointly and severally, for damages, interest, costs and such other and further relief as this Court deems just and proper.

### COUNT IV:
### BREACH OF FIDUCIARY DUTY
### (Igors and Boat Export)

84.     Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 46 above as if fully and expressly set forth herein and further alleges as follows.

85.     Igors, individually and as representative for Boat Export, represented to Plaintiff that Boat Export (i) would act as Plaintiff's agent; (ii) would advise Plaintiff on a vessel purchase;

(iii) would obtain the best price possible for a vessel, (iv) would receive compensation limited to an "export coordination fee" of $5,000; and (v) would maintain Plaintiff's funds in an escrow account.

86.     Having induced Plaintiff to purchase a vessel through Boat Export based on these representations, Defendants Igors and Boat Export stood in a fiduciary relationship with Plaintiff. Moreover, Plaintiff reposed trust and confidence in Defendants.

87.     Defendants owed Plaintiff the duty to act in the same manner as a reasonably prudent purchasing advisor.  Defendants owed Plaintiff the duty to avoid self-dealing, to avoid conflicts of interest, and to maximize Plaintiff's purchase funds.

88.     Defendants intentionally failed to perform these duties, including by conspiring to, and committing, (Count I) Racketeering in Violation of 18 U.S.C. § 1964; (Count II) Fraud; and (Count III) Constructive Fraud; and (Count VI)  Violation of Florida Deceptive and Unfair Trade Practices Act, § 501.201.

89.     Plaintiff has been damaged as a direct and proximate result of Defendants' breaches of fiduciary duty.

WHEREFORE, Plaintiff LEIGH THORNTON demands that judgment be entered against Defendants IGORS TJUTINS a/k/a Gary Tyutin, and BOAT EXPORT USA, LLC, jointly and severally, for damages, interest, costs and such other and further relief as this Court deems just and proper.

### COUNT V:
### <u>AIDING AND ABETTING BREACH OF FIDUCIARY DUTY</u>
### (Tatiana and Boat Shipping)

90.     Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 46 above as if fully and expressly set forth herein and further alleges as follows:

THE BOBADILLA LAW FIRM
INTELLECTUAL PROPERTY LAW & COMPLEX BUSINESS LITIGATION

91.    Igors, individually and as representative for Boat Export, represented to Plaintiff that Boat Export (i) would act as Plaintiff's agent; (ii) would advise Plaintiff on a vessel purchase; (iii) would obtain the best price possible for a vessel, (iv) would receive compensation limited to an "export coordination fee" of $5,000; and (v) would maintain Plaintiff's funds in an escrow account.

92.    Having induced Plaintiff to purchase a vessel through Boat Export based on these representations, Defendants Igors and Boat Export stood in a fiduciary relationship with Plaintiff. Moreover, Plaintiff reposed trust and confidence in Defendants.

93.    Defendants owed Plaintiff the duty to act in the same manner as a reasonably prudent purchasing advisor.  Defendants owed Plaintiff the duty to avoid self-dealing, to avoid conflicts of interest, and to maximize Plaintiff's purchase funds.

94.    Defendants Igors and Boat Export intentionally failed to perform these duties, including by conspiring to, and committing, (Count I) Racketeering in Violation of 18 U.S.C. § 1964; (Count II) Fraud; and (Count III) Constructive Fraud; and (Count VI)  Violation of Florida Deceptive and Unfair Trade Practices Act, § 501.201.

95.    Tatiana Tyutina and Boat Shipping each had knowledge of Defendant Igors and Boat Export's fiduciary duties.

96.    Tatiana and Boat Shipping gave substantial assistance and/or encouragement to Defendants in their breaches of fiduciary duties.

97.    Plaintiff has been damaged as a direct and proximate result of Defendant Tatiana and Boat Shipping's aiding and abetting Defendants' breaches of fiduciary duty.

THE BOBADILLA LAW FIRM
INTELLECTUAL PROPERTY LAW & COMPLEX BUSINESS LITIGATION

WHEREFORE, Plaintiff LEIGH THORNTON demands that judgment be entered against Defendant TATIANA TYUTINA and BOAT SHIPPING USA, LLC, jointly and severally, for damages, interest, costs and such other and further relief as this Court deems just and proper.

**COUNT VI:**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(CHAPTER 501.201 – 501.213, FLA. STATS.)**
**(Igors, Tatiana, and Boat Shipping)**

98.     Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 46 above as if fully and expressly set forth herein and further alleges as follows.

99.     This is an action for damages, declaratory judgment and injunctive relief under the Florida Deceptive and Unfair Trade Practices Act, § 501.201, et seq., Fla. Stat.

100.    The acts and practices of Defendants described above constitute unfair methods of competition and unfair or deceptive acts and practices under the Florida Deceptive and Unfair Trade Practices Act, § 501.201, et seq.

101.    Plaintiff has suffered damages as a direct and proximate result of Defendants' violation of the Florida Deceptive and Unfair Trade Practices Act, §501.201, et seq.

WHEREFORE, Plaintiff LEIGH THORNTON demands that judgment be entered against Defendants IGORS TJUTINS a/k/a Gary Tyutin, TATIANA TYUTINA, and BOAT SHIPPING USA, LLC, jointly and severally, for:

a.     a declaration pursuant to § 501.211, Fla. Stat. (2017), declaring Defendants' conduct unlawful and in violation of the Florida Deceptive and Unfair Trade Practices Act;

b.     damages suffered by Plaintiffs including, without limitation, lost profits, lost customer opportunities and damage to Plaintiffs' reputation and goodwill;

c.     costs and attorney's fees pursuant to § 501.2105, Fla. Stat.;

d.     costs, interest; and

THE BOBADILLA LAW FIRM
INTELLECTUAL PROPERTY LAW & COMPLEX BUSINESS LITIGATION

e.      such other and further relief as this Court deems just and proper.

**COUNT VII:**
**CONSPIRACY**
**(All Defendants)**

102.    Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 46 above as if fully and expressly set forth herein and further alleges as follows.

103.    The Defendants conspired and confederated with each other to commit, and committed, (Count I) Racketeering in Violation of 18 U.S.C. § 1964; (Count II) Fraud; (Count III) Constructive Fraud; (Count IV) Breach of Fiduciary Duty; (Count V) Aiding and Abetting Breach of Fiduciary Duty; and (Count VI) Violation of Florida Deceptive and Unfair Trade Practices Act, § 501.201.

104.    Plaintiff has suffered damages as a direct and proximate result of Defendants' conspiracy.

WHEREFORE, Plaintiff LEIGH THORNTON demands that judgment be entered against Defendants IGORS TJUTINS a/k/a Gary Tyutin, TATIANA TYUTINA, BOAT EXPORT USA, LLC, and BOAT SHIPPING USA, LLC, jointly and severally, for damages, interest, costs and such other and further relief as this Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

THE BOBADILLA LAW FIRM
INTELLECTUAL PROPERTY LAW & COMPLEX BUSINESS LITIGATION

August 9, 2021

Respectfully submitted,

THE BOBADILLA LAW FIRM
Attorneys for Plaintiff
20900 NE 30th Avenue, Suite 800
Aventura, FL 33180
Telephone: 786.446.8643
Facsimile:  786.446.8641

By: _s/ D. Fernando Bobadilla_
    D. Fernando Bobadilla, Esq.
    Fla. Bar No. 0136948
    fernandob@bobadillafirm.com